**STATE OF WEST VIRGINIA**

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **Z.H.**

**No. 19-0344** (Tucker County 18-JA-7)

## MEMORANDUM DECISION

Petitioner Grandmother N.S., by counsel Jeremy B. Cooper, appeals the Circuit Court of Tucker County's March 6, 2019, order terminating her custodial rights to Z.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights without first granting her a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2018, the DHHR filed a child abuse and neglect petition against petitioner, Z.H.'s paternal grandmother, and the father. The DHHR alleged that petitioner failed to provide proper supervision to the child due to her drug abuse. Specifically, the DHHR alleged that petitioner allowed a person who was on federal probation for a methamphetamine-related charge to live in the home. During a home search related to this person, law enforcement officers found the child in the father's room in the presence of marijuana, pills, drug paraphernalia, and possible methamphetamine, all of which was within the child's reach. Over the course of several interviews, Child Protective Services ("CPS") workers reported that petitioner fell asleep during an interview and appeared under the influence, unable to function or speak in complete sentences. Petitioner also provided a myriad of excuses for how the drugs and paraphernalia came to be in her home, including that they were unknowingly purchased in a lot of items from an auction. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in May of 2018. Petitioner stipulated to the allegations contained in the petition. Specifically, petitioner admitted that she failed to adequately protect the child by failing to intervene and protect the child from the father's substance abuse, as well as allowing a drug-abuser to live in the home with the child. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and ordered that the parties convene a multidisciplinary team ("MDT") meeting to discuss petitioner's request for a post-adjudicatory improvement period.

At a hearing held in June of 2018, the circuit court granted petitioner's request for a post-adjudicatory improvement period, although petitioner and the father failed to submit to several drug screens as previously ordered. In order to facilitate better compliance, the circuit court permitted petitioner and the father to submit to random drug screens on the same days as they claimed transportation issues prevented them from consistently screening. The circuit court held a status hearing in August of 2018, wherein petitioner failed to attend but was represented by counsel. The circuit court was advised that petitioner was not compliant with her improvement period, refused to attend MDT meetings, and had not consistently submitted to drug screens, which resulted in her inability to visit the child. A final review hearing was held in September of 2018. Once again, petitioner failed to attend but was represented by counsel. While the court was advised that petitioner continued to be noncompliant, the court continued the proceedings and scheduled a consolidated hearing to discuss petitioner's improvement period and disposition, as well as to provide her time to appear.

In October of 2018, the circuit court held a dispositional hearing. Petitioner appeared and requested a post-dispositional improvement period, which both the DHHR and the guardian opposed. Testimony established that petitioner had been completely noncompliant with the terms and conditions of her improvement period. Petitioner testified that she had never been contacted by a service provider for parenting and adult life skills classes. However, petitioner conceded that she had never contacted the DHHR, contacted her attorney, or attended any MDT meetings since her improvement period commenced. Rather than accept responsibility for her actions, petitioner blamed the DHHR for not informing her of dates of hearings and MDT meetings. Petitioner testified that she did not maintain contact with her attorney because she "figured that they'd let us know if we was missing something or if something was wrong I thought they might let us know." Petitioner testified that she had "done nothing wrong" and was being "treated like a criminal." She also complained that the DHHR "expect[ed] me to run down at the drop of a hat and be [drug] tested." Because the caseworker was not available to testify to the matter on that day, the hearing was continued.

The dispositional hearing reconvened in November of 2018. Petitioner failed to attend but was represented by counsel. The DHHR presented the testimony of a caseworker, who testified that no referral for parenting and adult life skills classes had been made due to petitioner's noncompliance with other services, such as calling in daily for random drug screens, submitting to drug screens when required, participating in supervised visitation, and seeking individual therapy. Petitioner only called in to the drug screening office six times after June of 2018, and submitted to no drug screens after the improvement period was granted. As a result, petitioner's supervised visitation with the child was suspended. Moreover, petitioner was expected to

participate in MDT meetings and court hearings, but failed to attend the MDT meetings and several hearings. Although petitioner did call the caseworker on one occasion, she only wanted to discuss her disapproval of the child's placement with his mother and failed to recognize her need to participate. The caseworker testified that petitioner's attitude was "it's always about somebody else and not about herself." After hearing evidence, the circuit court found that petitioner "wholly failed to participate" in her improvement period. The court noted that petitioner did not submit to a single drug screen and merely "sat back and felt that it was someone else's job to work [her] improvement period." Finding that petitioner had not participated in her improvement period to any degree, the court found that there was no likelihood that she would participate in another improvement period. The circuit court further found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her custodial rights was in the child's best interests. It is from the March 6, 2019, dispositional order terminating her custodial rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights without first granting her a post-dispositional improvement period. According to petitioner, the DHHR failed to make reasonable efforts as they did not provide services such as parenting and adult life skills classes. Testimony established that the service provider "never contacted [petitioner] regarding the provision of services" and that the caseworker "openly admitted that she never made the referral to [the service provider] that would have been necessary to begin the services." Petitioner contends that, without these services, it was "not appropriate . . . to terminate [her] rights." Rather, the circuit court "could have remedied the [DHHR's] abdication of its duty . . . by ordering a [post-]dispositional improvement period." We disagree.

---

[2]The father's parental rights were also terminated during the proceedings below. The child was placed in the care of his nonabusing mother and the permanency plan for the child is to remain in her care.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period if

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Here, petitioner was granted a six-month post-adjudicatory improvement period. She was required to demonstrate a substantial change in circumstances in addition to her likelihood of fully participating in an improvement period in order to be granted a post-dispositional improvement period. However, in her brief on appeal, petitioner does not indicate where she established any substantial change in her circumstances in the record. Moreover, she fails to demonstrate that she was likely to fully participate in an improvement period given her lack of participation in the underlying proceedings.

The record establishes that petitioner was instructed to call in daily to determine whether she was required to submit to a random drug screen. Prior to the grant of her improvement period, petitioner claimed that she and the father had difficulty submitting to drug screens on different days. As such, the circuit court permitted petitioner and the father to screen on the same day. Despite this opportunity to improve her compliance, petitioner only called in to the screening center six times after her improvement period began and did not submit to a single drug screen after June of 2018. Petitioner's failure to consistently submit to drug screens also led to the suspension of her supervised visitation with the child. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. at 90 n.14, 479 S.E.2d at 600 n.14 (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)).

Further, petitioner failed to accept responsibility for her actions, ultimately leading to her failure to attend several hearings and MDT meetings. Petitioner refused to maintain contact with anyone during the proceedings, but blamed the parties for her lack of participation. Petitioner admitted during the dispositional hearing that she never contacted the DHHR or her attorney following the start of her post-adjudicatory improvement period, but testified that she "figured that they'd let us know if we was missing something or if something was wrong I thought they might let us know." Moreover, petitioner maintained throughout the proceedings that she had "done nothing wrong" and was being treated like a criminal. We have previously held that

4

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, petitioner fails to demonstrate that she was entitled to a post-dispositional improvement period given her lack of compliance during the proceedings below, her inability to acknowledge responsibility for her actions, and her failure to demonstrate a substantial change in circumstances.

To the extent that petitioner argues that she should have been granted a post-dispositional improvement period based upon the DHHR's failure to make a referral for parenting and adult life skills classes, we find that the circuit court did not err given the overwhelming evidence of petitioner's noncompliance with other aspects of her improvement period. For example, petitioner admitted that she never called the DHHR or her attorney after the start of her improvement period and missed several MDT meetings and hearings. Moreover, petitioner never asked for assistance with setting up the parenting and adult life skills classes with which she now claims she would have complied. When a parent is granted an improvement period, he or she "shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A). As such, we find no error given petitioner's almost total absence from the proceedings below.

Based on the foregoing, we likewise find no error in the termination of petitioner's custodial rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental, guardianship, and custodial rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) sets forth several situations in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected," including when

[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The evidence set forth above supports the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner failed to respond to or follow through with any rehabilitative efforts offered during the proceedings below. She failed to participate in MDT meetings, attend court hearings, maintain contact with her attorney or the DHHR, call in daily in order to comply with the random drug screening system, and submit to any drug screens after June of 2018. Further, petitioner failed to acknowledge her actions, claimed she had done nothing wrong, and believed that she was being treated like a criminal. Because petitioner failed to put forth any sort of effort to remedy the

conditions of abuse, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. Therefore, we find no error in the termination of petitioner's custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 6, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison